PITMAN, J.,
dissents.
|,I respectfully dissent. The facts of this case are set out in the majority opinion; however^ important facts have been omitted.
This family, which consists of B.M., his father, Terran Mabry (“Mabry"), and his mother, Cherie Williams (“Williams”), reside in a very small travel trailer with raw sewage emptying onto the ground below it. There is one entry to the trailer which can only be accessed by walking through the sewage and tracking it inside on the floor of the trailei, where B.M. must walk.
Title VI of the Louisiana Children’s Code contains provisions regarding a child in need of care (“CINC”). According to La. Ch. C. art. 601:
The purpose of this Title is to protect children whose physical or mental health and welfare is substantially at risk of harm by physical abuse, neglect, or exploitation and who may be furthér threatened by the conduct of others, by providing for the reporting of suspected cases of abuse, exploitation, or neglect of children; by providing for the investigation of such complaints; and by providing, if necessary, for the resolution of child in need of care proceedings in the courts[.]
This article goes on to explain that proceedings are to be conducted expeditiously and that this Title is intended to provide the greatest possible protection as promptly as possible and that the health, safety and best interest of the child shall be the paramount concerns.
The seven grounds for finding a child in need of care are set out in La. Ch. C. art. 606. Allegations that a child is in need of care must assert one or more of the grounds. In the case of B.M., it was alleged that he was a victim of neglect. See La. Ch. C. art. 606(A)(2).
|2The Louisiana Department of Child and Family Services (“DCFS”) received a report that the parents of B.M. were' locking him in a bedroom for a majority of the day. This was investigated by a DCFS case worker and a Caddo Parish Sheriffs deputy. Upon arriving at the address they were given, they determined that Ma-bry, Williams and B.M. were living in a travel trailer behind the house with the address. It was then that the case worker and deputy had to walk through raw sewage to enter the trailer and found B.M., Williams and Mabry, who hid a marijuana cigarette under his cell phone. The parents were arrested, and B.M. was taken to the home of Mabry’s mother.
A definition of the term “neglect” is found in La. Ch. C. art. 603(18) as follows:
“Neglect” means the refusal or unreasonable failure of a parent or caretaker to supply the child with necessary food, clothing, shelter, care, treatment, or counseling for any injury, illness, or condition of the child, as a result of which the child’s physical, mental, or emotional health and safety is substantially threatened or impaired.
The safety of B.M. is substantially threatened by the conditions in which he is living. This was also a concern of the trial judge, who did not find B.M. to be a child in need of care, but told the parents that B.M. should stay with his grandmother until the sewage issue is corrected and they can provide an appropriate wholesome environment for B.M. La. Ch. C. art. 624 describes procedures for a continued custody hearing and a continued safety plan hearing. Neither of these was held.
During the time court proceedings were taking place, a Court-Appointed Special Advocate (“CASA”) volunteer was appointed to speak |3for the needs of B.M. A report, which details the facts of the case, was prepared by the CASA volunteer on *981 March 7, 2016, for consideration at a disposition hearing on March 15, 2016. This report indicates an extensive criminal history for Mabry, who has a number of alcohol and drug-related charges, and is required to register as a sex offender. He also has charges related to smoking marijuana in the presence of B.M., as does his wife. In fact, both parents were arrested during the investigation regarding the well-being of B.M. Marijuana was in plain sight in the trailer, more was given to the sheriff’s deputy, Mabry tested positive for marijuana and Williams confessed that they had smoked marijuana the previous day with B.M. present.
Recommendations were part of the CASA report, which included leaving B.M. in the custody of his paternal grandmother and step-grandfather, obtaining mental health evaluations for both Mabry and Williams, obtaining a substance abuse assessment for Mabry and giving supervised visitation for the paternal grandfather, Chester Mabry, at a neutral location. There is no evidence in the record that any of the recommendations were considered by the court.
We do not know whether the living conditions of B.M. have improved. We do not know if Mabry and Williams continue to use illegal drugs in the presence of B.M.
We do know that Mabry has an extensive criminal history and tested positive for marijuana and Williams admitted smoking marijuana in the presence of B.M. the day before they were arrested. We do know that no evidence was presented at the March 15, 2016 hearing to prove that raw [4sewage was no longer covering the ground under the travel trailer. We do know that the safety of B.M. is substantially threatened by the conditions in which he is living with his parents. .
For these reasons, I must dissent. I believe the trial court erred in not finding B.M. a child in need of care and implementing a plan to assure his safety. If parents neglect to provide a safe environment for their child, it is incumbent on our courts with jurisdiction over families to do so.